UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| -------------------------------------------------- ) | CRIMINAL NO. 16-CR-10006-WGY | |
| UNITED STATES OF AMERICA ) | | |
| ) | 18 U.S.C. § 371 | − Conspiracy |
| v. ) | | |
| ) | 26 U.S.C. § 7206(1) | − Subscribing to False Income Tax Return |
| (1) RAZA ALI, ) | | |
| (2) MUHAMMAD SALEEM IQBAL, ) | 18 U.S.C. § 982 (a)(1) | − Money Laundering Forfeiture Allegations |
| and ) | | |
| (3) KALEEM AHMAD, ) | | |
| ) | 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c) | − Forfeiture Allegations |
| Defendants ) | | |
| -------------------------------------------------- | | |

**GOVERNMENT'S SENTENCING MEMORANDUM WITH RESPECT TO MUHAMMAD SALEEM IQBAL AND KALEEM AHMAD**

The government respectfully submits this Sentencing Memorandum addressing questions in Paragraph 10 of the Court's Amended Procedural Order. (ECF. No. 60.)

Introduction

RAZA ALI ("ALI") and MUHAMMAD SALEEM IQBAL ("IQBAL") operated a wholesale business located in Norwood, Massachusetts that sold tobacco products, including cigars, smoking tobacco and smokeless tobacco (such as snuff and chewing tobacco), as well as other non-tobacco items, to convenience stores, gas stations and other retail businesses. KALEEM AHMAD ("AHMAD") worked with ALI and IQBAL.

Their wholesale tobacco business was conducted in Massachusetts under the names Pick N Dip and, later, MSI Distributors. To supply their business, they made regular purchases of tobacco products and cigars from two distributors in Pennsylvania, referred to in the Superseding Information as Supplier #1 and Supplier #2.

1

Wholesale businesses that distribute smoking tobacco, smokeless tobacco and cigars in the Commonwealth of Massachusetts must be licensed by the Massachusetts Department of Revenue.  Wholesalers of smokeless tobacco must file an excise tax form monthly and must pay an excise tax on smokeless tobacco brought into and sold in Massachusetts. Cigar and smoking tobacco wholesalers must file an excise tax form quarterly and must pay an excise tax on cigars and smoking tobacco brought into and sold in Massachusetts.

Beginning in or about 2010 and continuing until on or about November 18, 2015, ALI and IQBAL, and others known and unknown to the U.S. Attorney agreed to a scheme (1) to defraud the Commonwealth of Massachusetts of tax revenue from smoking tobacco, smokeless tobacco and cigars which the defendants shipped to Massachusetts and sold wholesale to convenience stores, gas stations and other retail businesses in the Commonwealth, and (2) to conceal the ownership and the control of the proceeds of their tobacco business and avoid transaction reporting requirements.  AHMAD joined the conspiracy some months after ALI and IQBAL established their tax-evading tobacco wholesale business, left to operate his own tobacco business from sometime in 2011 through sometime in 2013, and then returned to work closely with ALI and IQBAL until their business was searched and shut down on November 18, 2015.

Motion for Departure

The defendants' Guidelines' sentences in this case are substantially determined by the extent of the tax loss sustained by the Commonwealth of Massachusetts and their relative roles in the offense.  Neither AHMAD nor IQBAL challenge the Department of Revenue's tax loss calculations summarized in the table which immediately follows paragraph 14 of their Presentence Reports.

Between its inception in 2010 and when it was shut down at the end of 2015, ALI's and IQBAL's tax-evading wholesale tobacco business deprived the Commonwealth of at least twenty-eight million dollars in tax revenue. During the periods AHMAD was very active in this business, the business deprived the Commonwealth of approximately half that amount. These losses result in offense levels of 28 and 26 for Iqbal and Ahmad, respectively, pursuant to USSG § 2T4.1.

The defendants' offense was serious and the loss they caused the Commonwealth very substantial. But an untempered application of Section 2T4.1's loss table would result in an overstatement of the seriousness of the offense in the context of determining a fair and just sentence. There is a point at which neither specific nor general deterrence will be enhanced by a longer sentence. The defendants' business was more successful than some, but the underlying behavior to be addressed remains the same.

For this reasons, the government will move the Court at sentencing to depart from a strict application of the loss table and to evaluate this case as if the loss caused by the overall scheme was approximately $8,000,000 or $9,000,000 and proportionately, AHMAD was accountable for approximately half that amount, $4,000,000 or $4,500,000. These figures reflect the defendants' involvement in a long-term, sizeable, profitable and harmful criminal conspiracy. At the same time, they do not overly weigh exactly how much they sold.

If the Court grants the government's departure motion, the Court should consider IQBAL and AHMAD each as having a base offense level of 24 before considering their relative roles in the offense.

<u>Roles in the Offense</u>

Both IQBAL and AHMAD have challenged their role in the offense adjustments. In both instances, Probation has applied the Guidelines precisely and correctly. In both, the defendants are on the lower borderline of the role in the offense category in which they have been placed.

IQBAL has been given a four level increase pursuant to USSG § 3B1.1(a) because he was the "organizer or leader of a criminal activity that involved five or more participants." IQBAL and ALI established the tax-evading wholesale tobacco business, used a false identity to conceal its ownership, used a shell corporation to conceal where it was doing business, and made and directed multiple cash deposits of less than $10,000 to avoid transaction reporting requirements. IQBAL and ALI also profited most from the business. Five people have admitted either in interviews or before this Court to the requisite criminal intent to establish that they also were criminally responsible for the conspiracy charged in Count 1 of the Superseding Information. (*See* PSR ¶ 9.) Accordingly, IQBAL's role in the tax-evading tobacco wholesale business squarely satisfies the requirements of USSG § 3B1.1(a).

All that being said, IQBAL's and ALI's tax-evading wholesale tobacco business was a relatively small criminal enterprise. It had a good-size volume, but was not extensive in scope as many narcotics distribution organizations are, for example. The distinction between organization and leadership, and that of management or supervision, was of less significance here than in larger enterprises. Accordingly, the distinction between the appropriateness of a four level role in the offense adjustment because IQBAL was an "organizer or leader of a criminal activity that involved five or more participants" under USSG § 3B1.1(a) rather than a three level enhancement because he was a "manager or supervisor (but not an organizer or leader)" under USSG § 3B1.1(b) is also less significant to capturing his relative responsibility for sentencing. (*See* USSG § 3B1.1, Background.)

Probation has given AHMAD neither an aggravating nor mitigating role adjustment. At one point or another, he was active in all aspects of the tax-evading wholesale tobacco business: he took tens of thousands of dollars in cash to Pennsylvania to buy tobacco for the business, he drove tobacco from Pennsylvania to Massachusetts for the business (he knew the purpose of both of these was to avoid paying taxes), he deposited cash from tobacco sales in the bank in an amount less than $10,000 to avoid bank reporting requirements, he took orders and he handed orders to customers. While familiar with all aspects of the tax-evading business, AHMAD was not a full partner in the business with ALI and AHMAD. He worked for these two in trusted tasks, as necessary for the business.

While AHMAD never withdrew from the conspiracy as a matter of law and thus is responsible for all of the losses associated with it, the government has sought to reflect that part of his lessor role in the conspiracy's loss associated with his shorter participation by cabining his loss figure to the period in which he was active in the conspiracy.

With respect to AHMAD's relative position within the conspiracy's participants, USSG § 3B1.2, Application Note 3(c)(i-v) directs the Court to consider five factors, among others, in determining whether to give a minor or minimal participant adjustment in a case. Applying these, AHMAD was clearly <u>not</u> a minimal participant as contemplated by the Guidelines. He understood the scope and structure of the tax-evading tobacco business (*see* USSG 3B1.2, Application Notes 3(c)(i) and 4), participated actively in its business during two periods totaling approximately 2-3 years, and participated in several of the activities necessary for the tax-evading tobacco wholesale business to succeed. (*See* USSG 3B1.2, Application Note 3(c)(iv).) He also lived for that 2-3 years on the proceeds of the tax-evading wholesale tobacco business,

and thus stood to benefit and did benefit significantly from the criminal activity.  (*See* USSG 3B1.2, Application Note 3(c)(iv).)

Two of the listed factors favor consideration of a minor role adjustment.  Ahmad did not play a significant role in the planning or organizing of the criminal activity (*see* USSG 3B1.2, Application Note 3(c)(ii)) and did not exercise significant decision making authority (*see* USSG 3B1.2, Application Note 3(c)(iii)).  On balance, the government believes that Probation is correct in not giving AHMAD any role adjustment, but that his lesser decision making role should be reflected in a sentence at the lower end of the otherwise applicable guideline range.

## USSG § 2B1.1 versus USSG § 2T4.1

The plea agreement contemplates the defendants' offense level being determined based on USSG § 2B1.1 rather than USSG § 2T4.1.  2B1.1 was incorporated into the plea agreement rather than § 2T4.1 after government counsel spoke to a Probation officer who had handled a similar case in Springfield.  AHMAD has objected to the application of § 2T4.1, here, rather than § 2B1.1, as contemplated by the plea agreement.

It is not necessary to resolve which of these two advisory Guideline provisions is preferable to apply to the charges and facts of this case.  In the present case, there is no substantive difference between the two.  For any loss of $550,000 or above, applying § 2B1.1 to a tax conspiracy charge results in the same offense level as applying § 2T4.1, unless one of § 2B1.1's specific offense characteristic's other than loss also applies.  None do here.

## Conclusion

The Court should depart to a base offense level of 24 for MUHAMMED SALEEM IQBAL and KALEEM AHMAD, adjust this downward by 3 levels for their prompt acceptance of responsibility and, in IQBAL's case, upwardly adjust his offense level for his clearly

supervisory role in the criminal activity.  Having done so, this Court should sentence IQBAL and AHMAD to sentences within their respective applicable advisory Sentencing Guideline ranges.

                                      Respectfully submitted,

                                      CARMEN M. ORTIZ
                                      United States Attorney

                    By:    */s/ Stephen P. Heymann*
                          Stephen P. Heymann
                          Assistant U.S. Attorney

Date: October 7, 2016

### Certificate of Service

I hereby certify that this document is being served through the ECF system on counsel of record for the defendants in the case.

                                        */s/Stephen P. Heymann*